WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph Miller, Esq.
Peter Gruenberger, Esq.
Robert Lemons, Esq.

*Attorneys for Debtor and Plaintiff*
*Lehman Brothers Commodity Services Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC.,<br><br>Debtor. | Chapter 11 Case<br>No. 08-13555 (JMP)<br><br>(Jointly Administered) |
| LEHMAN BROTHERS COMMODITY SERVICES INC.,<br><br>Plaintiff,<br><br>    v.<br><br>SEMPRA ENERGY TRADING LLC (f/k/a SEMPRA ENERGY TRADING CORP.) and SEMPRA OIL TRADING SÀRL,<br><br>Defendants. | Adv. Proc. No. 11-_____ |

## ADVERSARY COMPLAINT

Plaintiff Lehman Brothers Commodity Services Inc. ("LBCS"), as debtor

in possession, as and for its Adversary Complaint against Defendants Sempra Energy

Trading LLC (f/k/a Sempra Energy Trading Corp.) ("SET") and Sempra Oil Trading Sàrl

("SOT" and together with SET, "Sempra" or "Defendants"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1.       This action arises from Defendants' refusal to pay to LBCS the principal amount of more than $104.7 million (the "LBCS Receivable") that SET and SOT admittedly owe to LBCS in order to gain leverage and an improper advantage over LBCS, its estate, and other creditors.  As justification, Defendants have asserted, and continue to assert, unlawful and nonmutual setoff rights (the "Purported Setoffs") against LBCS based on alleged claims of entities *other than* SOT or SET against LBCS and Lehman entities *other than* LBCS.  Specifically, Defendants assert setoff rights on account of obligations that (i) LBCS allegedly owes to Defendants' affiliate, Sempra Energy Solutions LLC (f/k/a Sempra Energy Solutions) ("SES"); (ii) Lehman Brothers Special Financing Inc. ("LBSF") allegedly owes to The Royal Bank of Scotland plc ("RBS"); (iii) Lehman Brothers Inc. ("LBI") allegedly owes to RBS; and (iv) Lehman Brothers International (Europe) ("LBIE") allegedly owes to ABN AMRO Bank N.V. ("ABN AMRO").

2.       The diagram below illustrates that LBCS has claims against SET and SOT totaling over $104.7 million in aggregate (exclusive of interest),[1] but neither SET nor SOT has a claim against LBCS.

---

[1] The amounts owed by SET and SOT to LBCS, included in the below diagram, are taken from Defendants' Calculation Statement, as defined *infra*.  The exact amount owed to LBCS will be determined during trial, if any such trial occurs.

**Obligations Owed to LBCS by Defendants**



3.      Further, the Purported Setoffs asserted by Defendants, as shown by a second diagram below,[2] are nonmutual, meaning the obligations that Defendants seek to set off are not owed by the same parties in the same capacity.   Thus, such obligations cannot permissibly be set off against Defendants' obligations to LBCS.   Such Purported Setoffs are in express violation of and are impermissible under section 553(a) of title 11 of the United States Code (the "Bankruptcy Code").

**Alleged Obligations of LBCS and Its Affiliates to Entities Other Than Defendants**



---

[2] The amounts claimed by SES and RBS, included in this diagram, are taken from Defendants' Calculation Statement, as defined *infra*, and proof of claim number 37431 filed by RBS against the LBSF estate.   Such alleged amounts have not been accepted by the LBCS or LBSF estates.

4.     SET and SOT may not avoid paying their own obligations due and owing to LBCS by using the alleged claims that SES, a separate and distinct entity, may have against LBCS.   Moreover, SET and SOT may not reduce their own obligations to LBCS by using the alleged claims of RBS and ABN AMRO, also separate and distinct entities from Defendants, against entities other than *LBCS*.   Such putative setoffs are unlawful and detrimental to the LBCS estate because, if permitted, they would (a) deprive LBCS of its rightful claims against Defendants and (b) transform SES's, RBS's, and ABN AMRO's alleged unsecured claims against LBCS, LBSF, LBIE, and LBI into allowed secured claims (by virtue of section 506(a)(1) of the Bankruptcy Code). Moreover, LBIE is currently in administration proceedings in England while LBI is subject to proceedings under the Securities Investor Protection Act of 1970 ("<u>SIPA</u>"). Both of those proceedings are separate and unrelated to the LBCS chapter 11 proceedings—LBCS has no control over them.   Because Defendants have no valid setoff rights that justify withholding the LBCS Receivable, by withholding such sums and by attempting to effectuate an unlawful setoff, Defendants continue to act in direct violation of the Bankruptcy Code.

5.     To date, and despite LBCS's unequivocal demands for payment, Defendants have failed to seek relief from the automatic stay to permit the Purported Setoffs of over $104.7 million that Defendants willfully are withholding from LBCS and its estate.   Instead, in willful disregard of the automatic stay provision in the Bankruptcy Code, Defendants steadfastly have refused to make *any* payment, forcing LBCS to initiate this adversary proceeding to recover LBCS's property for the benefit of its estate.

6.     Defendants have sought to justify their willful violation of the automatic stay by reference to the Bankruptcy Code's safe harbor provisions for swap participants and master netting agreement participants (sections 560 and 561, respectively) (the "Safe Harbor Provisions").   The Safe Harbor Provisions do not permit the exercise of *nonmutual* setoffs in violation of section 553 of the Bankruptcy Code. Rather, they merely permit certain *mutual* setoffs to be exercised in connection with the termination, liquidation, and acceleration of swap transactions despite the automatic stay and the Bankruptcy Code's prohibitions on *ipso facto* clauses.   Defendants' attempt to cloak themselves in the Safe Harbor Provisions runs afoul of the clear language, purpose, and intent of those provisions.   If the Court were to permit such abuse of the Safe Harbor Provisions, it would deprive the LBCS estate and its creditors of over $104.7 million in principal to which the LBCS estate is rightfully entitled to from Defendants.

7.     LBCS brings this action to protect the interests of its estate and the beneficiaries thereof and to obtain:  (a) a declaration that the Purported Setoffs are not permitted under section 553(a) of the Bankruptcy Code; (b) a declaration that no exception to the mutuality requirement in section 553(a) of the Bankruptcy Code exists by virtue of the Safe Harbor Provisions so as to permit the Purported Setoffs; (c) an order under section 542(b) of the Bankruptcy Code requiring Defendants immediately to turn over the principal amount of more than $104.7 million owed, which they admit is owed to LBCS and which is property of the LBCS estate under section 541(a)(1) of the Bankruptcy Code; (d) an order pursuant to section 542 of the Bankruptcy Code requiring Defendants to turn over all Accrued Interest on the LBCS Receivable, as defined herein and in an amount to be determined at trial, if any such trial occurs; (e) a declaration that

Defendants violated the automatic stay and, consequently, Defendants must turn over the LBCS Receivable plus all Accrued Interest, as defined herein and in an amount to be determined at trial, if any such trial occurs; and (f) an award of damages to LBCS, against Defendants, based on their willful violations of the automatic stay, in an amount to be determined at trial, if any such trial occurs.

## JURISDICTION AND VENUE

8.　　This is a civil proceeding arising in a case under the Bankruptcy Code, § 11 U.S.C. 101, *et seq.*, within the meaning of 28 U.S.C. § 1334.　It is properly brought as an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9.　　This Court has jurisdiction to entertain the claims asserted herein pursuant to 28 U.S.C. § 1334(b) (civil cases arising under title 11), 28 U.S.C. § 1334(e)(1) (district court's exclusive jurisdiction over property of the estate), and 28 U.S.C. § 157(b) (core proceedings arising under title 11).

10.　　This is a core proceeding under 28 U.S.C. § 157(b).

11.　　Venue is proper in this district under 28 U.S.C. § 1409(a).

12.　　This Court has personal jurisdiction over Defendants pursuant to Bankruptcy Rule 7004(f).

## PARTIES AND RELATED ENTITIES

13.　　Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holding, Inc. ("LBHI") and certain of its subsidiaries (collectively with LBCS, the "Debtors") initiated with this Court voluntary cases under chapter 11 of the Bankruptcy Code.　LBCS commenced its

chapter 11 case on October 3, 2008.   LBCS's chapter 11 case has been consolidated with LBHI's chapter 11 case for procedural purposes only, and those cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).   LBCS's principal place of business is located at 1271 Sixth Avenue, New York, New York 10020, and LBCS is authorized to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

14.     On September 19, 2008, by order of the United States District Court for the Southern District of New York a liquidation proceeding was commenced for LBI pursuant to the provisions of SIPA (the "SIPA Proceedings").   *Securities Investor Protection Corp. v. Lehman Brothers Inc.*, Case No. 08-CIV-8119 (GEL), Order Commencing Liquidation, Docket No. 3 (S.D.N.Y. Sept. 19, 2008).

15.     Pursuant to a court order on September 15, 2008, LBIE entered English administration proceedings pursuant to the Insolvency Act of 1986.

16.     SET is a limited liability corporation organized and existing under the laws of the State of Delaware with a registered agent at the address of 160 Greentree Drive, Suite 101, Dover, Delaware 19904.   SET's principal place of business is 58 Commerce Road, Stamford, Connecticut 06902.

17.     SOT is a corporation organized and existing under the laws of Switzerland with a designated agent at the address of 111 Old Broad Street, London, England EC2N 1SE.   SOT's principal place of business is 15-17 rue du Cendrier, CH-1211 Geneva, Switzerland.   SOT transacted with LBCS through SET in Connecticut.

## FACTUAL ALLEGATIONS

**A.**    **The Prepetition Transactions and Defendants' Delivery of the Calculation Statement**

18.    Prior to the Commencement Date, LBCS transacted with SET and SOT under two sets of arrangements. LBCS and SET entered into swap transactions pursuant to a 1992 Multicurrency-Cross Border ISDA Master Agreement, dated as of May 1, 2006 (as amended, supplemented, or modified, and including all schedules, annexes, and exhibits thereto, and all confirmations exchanged pursuant to the Transactions entered into thereunder, the "SET Master Agreement"). LBCS and SET also entered into crude oil purchase and sale transactions as evidenced by transaction confirmations relating thereto (such transactions and all documentation relating thereto, as amended from time to time, the "Oil Agreements"). Both the SET Master Agreement and the Oil Agreements are governed by New York law.

19.    LBCS and SOT entered into swap transactions under a 1992 Multicurrency-Cross Border ISDA Master Agreement, dated as of January 10, 2007 (as amended, supplemented, or modified, and including all schedules, annexes, and exhibits thereto, and all confirmations exchanged pursuant to the Transactions entered into thereunder, the "SOT Master Agreement"). The SOT Master Agreement is governed by English law.

20.    Also, prior to the Commencement Date, LBCS and SES entered into swap transactions under a 1992 Multicurrency-Cross Border ISDA Master Agreement, dated as of August 25, 2006 (as amended, supplemented, or modified, and including all schedules, annexes, and exhibits thereto, and all confirmations exchanged

pursuant to the Transactions entered into thereunder, the "<u>SES Master Agreement</u>" and collectively with the SET Master Agreement and the SOT Master Agreement, the "<u>Master Agreements</u>").

21.     By notices dated September 14, 2008, SET, SOT, and SES notified LBCS they were terminating the Master Agreements and designated September 15, 2008 as the early termination date (the "<u>Early Termination Date</u>") with respect to all transactions under the respective Master Agreements (the "<u>Early Termination Notices</u>"). By notice dated September 14, 2008, SET notified LBCS that it was terminating and liquidating the Oil Agreements and designated September 15, 2008 as the early termination date (the "<u>Oil Agreements Early Termination Notice</u>").

22.     Pursuant to the SET and SOT Master Agreements, Defendants were required to calculate their "Loss" in respect of the transactions under those agreements.   SET and SOT Master Agreements, Schedule Part 1(f).   "Loss" means:

> with respect to [the Master] Agreement[s] or one or more Terminated Transactions, as the case may be, . . . an amount that party reasonably determines in good faith to be its total losses and costs (or gain, in which case expressed as a negative number) in connection with this [the Master] Agreement[s] or that Terminated Transaction or group of Terminated Transactions, as the case may be, including any loss of bargain, cost of funding or, at the election of such party but without duplication, loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position (or any gain resulting from any of them).

*Id.* at § 14 (Loss definition).

23.     Defendants were required to make such calculations "[o]n or as soon as reasonably practicable following the occurrence of an Early Termination Date,"

and provide to LBCS a "statement (1) showing, in reasonable detail, such calculations (including all relevant quotations and specifying any amount payable under Section 6(e)) and (2) giving details of the relevant account to which any amount payable to it is to be paid." *Id.* § 6(d)(i). On May 15, 2009, LBCS received from SET, SOT, and SES such a statement, pursuant to section 6(d)(i) of their respective Master Agreements, with calculations including Defendants' "Loss" (or "Gain," with respect to SET and SOT) as a result of the early termination of the Master Agreements and the Oil Agreements (the "Calculation Statement").

24. In the Calculation Statement, Defendants conceded that the following amounts were owed to LBCS as early termination payments under the SET Master Agreement, the SOT Master Agreement, and the Oil Agreements:

- $94,852,002 payable by SET to LBCS under the SET Master Agreement (the "SET Early Termination Payment");

- $9,682,544 payable by SOT to LBCS under the SOT Master Agreement (the "SOT Early Termination Payment"); and

- $243,537 payable by SET to LBCS under the Oil Agreements (the "SET Oil Payment" and together with the SET Early Termination Payment and the SOT Early Termination Payment, the "Early Termination Payments").

The total aggregate principal amount of the LBCS Receivable, as stated in Defendants' Calculation Statement, amounts to at least $104,778,083. The exact amount of the LBCS Receivable will be determined at trial, if any such trial occurs.

25. Both the SET and SOT Master Agreements provide that Defendants were required to remit the SET and the SOT Early Termination Payment on the date that the Calculation Statement was delivered. *Id.* §§ 6(d)(ii), 12(a)(i) (noting hand delivery of notice is effective on date of delivery).

26.     The Oil Agreements provide that, upon an event of default by one party (the "Non-Performing Party"), which event of default can include the filing of a petition for relief under the Bankruptcy Code, the other party (the "Performing Party") shall have the right to terminate the parties' transactions and calculate a net settlement payment due to either party under all transactions between the parties.  Oil Agreements, Non-Performance ¶¶ (1)-(4).  "The party with the payment obligation shall pay such amount to the other party within one business day of the liquidation."  *Id.* ¶ (3).

**B.     The Purported Setoffs**

27.     Despite the fact that the Early Termination Payments—which make up the LBCS Receivable—have been due and payable since, at the very latest, the delivery of the Calculation Statement, and despite the fact that Defendants explicitly acknowledged that the Early Termination Payments due to LBCS amount to over $104.7 million in principal, Defendants have willfully refused to make any payment to LBCS.

28.     As purported justification for their intentional violation of the automatic stay, in their Calculation Statement SET and SOT assert first that they may set off the LBCS Receivable against the $253,405 LBCS allegedly owes SES under the SES Master Agreement (the "Alleged SES Receivable").  Defendants contend that such setoff is permissible under two equally meritless grounds: (i) section 6(f) of the SET and SOT Master Agreements, and (ii) the alleged "Non-Performance" provisions of the Oil Agreements.[3]

---

[3]  Defendants also have asserted without detail or specification that they may deduct any alleged expenses and fees, which deductions LBCS challenges as contrary to the terms of the Master Agreements.

29.     Section 6(f) of the SET and SOT Master Agreements provides, in

relevant part, as follows:

> Any amount payable to one party by the other party under Section 6(e), . . . will be made without set-off or counterclaim except that at the option of the party ("X") other than the Defaulting Party or the Affected Party (and without prior notice to the Defaulting Party or the Affected Party), X may, without prior notice to any person, set-off any sum or obligation (whether or not arising under this Agreement, whether or not matured and irrespective of the currency, place of payment or booking office of the sum or obligation) owed by the Defaulting Party or Affected Party (in either case, "Y") to X or any Affiliate of X against any sum or obligation (whether or not arising under this Agreement, whether or not matured and irrespective of the currency, place of payment or booking office of the sum or obligation) owed by X or any Affiliate of X to Y; provided that any amount not then due which is included in such setoff shall be discounted to present value as at the time of setoff (to take account of the period between the time of setoff and the date on which such amount would have otherwise been due) at the applicable rate for that period determined by X in any commercially reasonable manner.  X will give notice to the other party of any set-off effected under this Section 6(f).

SET and SOT Master Agreements, § 6(f).

30.     Similarly, the Oil Agreements provide that the "Performing Party

may, . . . set off amounts which the Non-Performing Party owes to it or its affiliates

against any amounts which it owes to the Non-Performing Party (whether hereunder,

under a transaction or otherwise and whether or not then due)."  Oil Agreements, Non-

Performance ¶ (5).

31.     These provisions, however, do not afford Defendants the right to

exercise a nonmutual setoff of the LBCS Receivable against the Alleged SES Receivable,

because the exercise of such right would be in violation of the express requirement of

mutuality in section 553 of the Bankruptcy Code.   Moreover, on their face, these provisions in the SET and SOT Master Agreement, as well as the Oil Agreements, apply *only* to the purported setoff of the LBCS Receivable against the sum LBCS allegedly owes to SES, which is, at most, $253,405.

32.     In an attempt to justify withholding the entire $104.7 million of the LBCS Receivable, Defendants, therefore, concocted, as expressed in their Calculation Statement, a second, and even more implausible argument, asserting that their "Affiliates" possess "additional rights of counterclaim and set-off" that justify Defendants' depriving LBCS of more than $104.7 million of principal.   Specifically, Defendants have asserted that such rights exist in "law, in equity or contained in certain other agreements with you and/or your Affiliates."   On this basis, Defendants contend they may set off the LBCS Receivable against amounts allegedly owed to other entities, RBS and ABN AMRO, from entities other than LBCS (the "<u>Alleged RBS/ABN Receivables</u>").

33.     These Alleged RBS/ABN Receivables purportedly are owed (i) to RBS from LBSF under that certain 1992 form ISDA Master Agreement between RBS and LBSF dated as of September 15, 2003 (the "<u>RBS/LBSF Master Agreement</u>"; (ii) to ABN AMRO from LBIE, under that certain 1992 form ISDA Master Agreement between ABN AMRO and LBIE dated as of January 24, 1997 (the "<u>ABN/LBIE Master Agreement</u>"); and (iii) to RBS from LBI under that certain 1992 form ISDA Master Agreement between RBS and LBI, dated as of November 25, 1996 (the "<u>RBS/LBI Master Agreement</u>") and together with the RBS/LBSF Master Agreement and the ABN/LBIE Master Agreement, the "<u>Affiliate Master Agreements</u>").

34.     As a purported basis for these nonmutual setoffs, Defendants refer to certain terms of agreement ("Terms of Agreement"), which allegedly were "delivered" from RBS Greenwich Capital ("RBS Greenwich Capital") "to certain of [LBCS's] affiliates,"—not between or among either LBCS, SOT, or SET.  LBCS, having never been the recipient of these so-called Terms of Agreement, requested that Defendants provide it with a copy.  After some delay, Defendants did so and, upon inspection, it is clear that the Terms of Agreement are not only unrelated to the Master Agreements between LBCS and either SOT or SET, *but also are wholly unrelated* to the Affiliate Master Agreements, which allegedly give rise to the Alleged RBS/ABN Receivables against which Defendants purport to set off the LBCS Receivable.  Rather, the Terms of Agreement appear to be an extraneous document allegedly attached to quarterly brokerage confirmations which were sent from RBS Greenwich Capital to LBSF. Importantly, LBCS was neither the recipient of the Terms of Agreement nor a party to the transactions with RBS Greenwich Capital.  Defendants cannot avoid their clear and unequivocal obligations under the terms of the SET Master Agreement, the SOT Master Agreement, and the Bankruptcy Code, by relying upon an entirely unrelated document that was delivered by an entity other than SET or SOT to an entity other than LBCS.

35.     Moreover, the language in the Terms of Agreement (which Defendants apparently rely upon to exercise their meritless "setoff"), even if it were enforceable (which it is not), does not apply to a setoff of obligations owed to LBCS, but

rather, is limited to obligations that RBS Greenwich Capital owes to an entirely different counterparty, LBSF.[4]

36.     Finally, even assuming that the Terms of Agreement could be deemed to apply to the Purported Setoffs, to enforce them would be in a violation of the bedrock principle of bankruptcy law that all setoffs against a debtor be mutual, and thus, impermissible and in violation of section 553 of the Bankruptcy Code.

### C.     LBCS's Demands for Payment

37.     From and after LBCS's receipt of the Calculation Statement, the Defendants and LBCS have communicated numerous times attempting to reconcile their trades, during which communications LBCS consistently has contested the Purported Setoffs.   Having made minimal progress through such discussions, on December 1, 2010, LBCS made a written demand on Defendants contesting the validity of the

---

[4] Specifically, the Terms of Agreement provide:

> If Customer or any of its affiliates (collectively, the "Customer Parties") shall default . . [or] file or be the subject of the filing or entry of a petition or order for relief under Title 11 or [sic] the U.S. Code . . . each RBS Greenwich Capital Party may . . . set off any obligation *owing by it to you* against any obligations owing by you or any other Customer Party to it or any other RBS Greenwich Capital Party.

*Id.* ¶ 14 (emphasis added).   "Customer" is defined in the preamble to the Terms of Agreement as "you," being the recipient of the confirmation.   In the case of the confirmation produced by Defendants, LBSF would have been the "Customer."   Thus, the purported setoff right allegedly contained in Paragraph 14 of the Terms of Agreement is limited in application to setoffs of *obligations of RBS Greenwich Capital Parties to LBSF* against obligations of LBSF or its affiliates to RBS Greenwich Capital and other RBS Greenwich Capital Parties.   *None* of the obligations that Defendants seek to set off is an obligation owing *from RBS Greenwich Capital to LBSF*.   Moreover, it is far from clear that Defendants are "affiliates" of RBS Greenwich Capital within the meaning of the Terms of Agreement.

Purported Setoffs of (i) the LBCS Receivable against the Alleged RBS/ABN Receivables under both the Terms of Agreement and the Bankruptcy Code, and (ii) the LBCS Receivable against the Alleged SES Receivable under the Bankruptcy Code, and demanding immediate payment of the LBCS Receivable plus Accrued Interest, as defined herein.

38.     On December 13, 2010, Defendants responded in writing raising two arguments attempting to create mutuality required for setoff.[5]  First, Defendants asserted that they could collapse into a single entity all the involved Debtor entities, thereby unilaterally effecting substantive consolidation of the Debtors.  Second, Defendants asserted they could combine SET, SOT, SES, RBS, and ABN AMRO so that they could set off the LBCS Receivable against the Alleged SES Receivable under the terms of the Master Agreements.

39.     Although LBCS disagreed with the position Defendants took in their December 13, 2010 letter, based upon the clear and express requirement of mutuality under section 553 of the Bankruptcy Code and both controlling and persuasive jurisprudence on this issue, LBCS agreed to meet with Defendants to discuss their respective positions on these issues and in an attempt to reach a mutual resolution.  The meeting was unproductive and the parties reached an impasse.  Accordingly, LBCS now

---

[5] LBCS's reference to the December 13, 2010 letter in this Complaint does not implicate Federal Rule of Evidence 408(a) because LBCS does not seek to introduce it as evidence to prove the liability for, the invalidity of, or the amount of the claim that is disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction. Fed. R. Evid. 408(a).

initiates this adversary proceeding to recover the LBCS Receivable plus Accrued Interest thereon.

## COUNT I

### (Declaratory Judgment That The Purported Setoffs Are Not Enforceable Under Section 553 Of The Bankruptcy Code)

40.     LBCS repeats and realleges each and every allegation set forth in paragraphs 1 through 39 as if fully set forth herein.

41.     To date, Defendants have failed to pay any portion of the LBCS Receivable and have asserted invalid, nonmutual, and unlawful rights of purported setoff.

42.     The requirement that all setoffs be of mutual debts is a fundamental tenet in bankruptcy law, which tenet was codified in section 553 of the Bankruptcy Code.

43.     Section 553(a) of the Bankruptcy Code provides, in relevant part, that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

11 U.S.C. § 553(a).

44.     By its terms, section 553 of the Bankruptcy Code does not create a right of setoff; it merely preserves any right of setoff that a creditor of a debtor may have under applicable non-bankruptcy law, while imposing the additional requirement that any debt sought to be setoff against a debt owed to a debtor be a "mutual debt"—*i.e.*, a debt owing by the debtor to the creditor seeking to avail itself of the setoff on the other hand.

11 U.S.C. § 553(a). The law is clear and well settled, mutuality is strictly construed and requires that the debts and claims be owed between the *same* parties acting in the *same* capacity. Mutuality is a prerequisite to the right of setoff under both (i) New York law, which is the applicable non-bankruptcy law governing the parties' rights and obligations under the SET Master Agreement and the Oil Agreements, and (ii) English law, which is the applicable non-bankruptcy law governing the parties' rights and obligations under the SOT Master Agreement.

45. The Purported Setoffs do not involve "mutual debts," rather they are attempts by Defendants to set off the debts admittedly owed from SET and SOT *to LBCS* against (a) an obligation allegedly owed by LBCS to *SES* and (b) obligations allegedly owed to entities *other than SET and SOT* by *affiliates* of LBCS. These Purported Setoffs encompass nonmutual obligations; obligations that are not owed by the same parties in the same capacity.

46. Section 6(f) of the SET and the SOT Master Agreements is unenforceable (i) to create mutuality for purposes of section 553 or (ii) as an exception to the mutuality requirement under the Bankruptcy Code.

47. Similarly, subsection 5 of the Non-Performance provisions in the Oil Agreements is unenforceable (i) to create mutuality for purposes of section 553 or (ii) as an exception to the mutuality requirement under the Bankruptcy Code.

48. There now exists an actual, justiciable controversy between LBCS and Defendants relating to their respective legal rights, duties, and obligations under the Bankruptcy Code, which controversy is now ripe for adjudication pursuant to 28 U.S.C. § 2201.

49. LBCS requests a judgment declaring the rights and obligations of the parties under the Bankruptcy Code, including a declaration that the Purported Setoffs are impermissible and unlawful and constitute a violation of the Bankruptcy Code.

## COUNT II

**(Declaratory Judgment That the Purported Setoffs Are Not Made Permissible by Virtue of Sections 560 or 561 of the Bankruptcy Code)**

50. LBCS repeats and realleges each and every allegation set forth in paragraphs 1 through 49 as if fully set forth herein.

51. Section 560 specifies rights that parties to swap agreements have when a swap counterparty files for bankruptcy. Specifically, it provides, as follows:

> The exercise of any contractual right of any swap participant . . . to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title.

11 U.S.C. § 560.

52. Section 561(a) confers similar rights to parties to master netting agreements, and permits a party to do the following:

> cause the termination, liquidation, or acceleration of or to offset or net termination values, payment amounts, or other transfer obligations arising under or in connection with one or more (or the termination, liquidation, or acceleration of one or more) . . . (5) swap agreements; or (6) master netting agreements . . .

*Id.* § 561(a).

53. Sections 560 and 561, neither on their face nor by their purpose and intent, provide for an exception to the express mutuality requirement contained in

section 553 of the Bankruptcy Code. Accordingly, Defendants may not exercise their Purported Setoffs under the cloak of the Safe Harbor Provisions.

54.     LBCS, therefore, requests a judgment declaring the rights and obligations of the parties under the Bankruptcy Code, including a declaration that no exception exists under section 560 or 561 (the Safe Harbor Provisions), allowing the exercise of nonmutual setoff rights in violation of section 553 of the Bankruptcy Code.

## COUNT III

**(Turnover Of The Entire LBCS Receivable Pursuant To Section 542(b) Of The Bankruptcy Code)**

55.     LBCS repeats and realleges each and every allegation set forth in paragraphs 1 through 54 as if fully set forth herein.

56.     As stated above, on September 15, 2008 and October 3, 2008, LBHI and LBCS, respectively, filed petitions for relief under chapter 11 of the Bankruptcy Code. As a consequence of LBHI's filing, Defendants terminated the swap transactions under the Master Agreements, effective as of September 15, 2008 (the Early Termination Date). Thereafter, on May 15, 2009, Defendants delivered to LBCS the Calculation Statement disclosing that SET and SOT owed Defendants in excess of $104.7 million (the LBCS Receivable), excluding interest, as a result of the early termination of the transactions.

57.     The LBCS Receivable is property of the LBCS estate under section 541(a) of the Bankruptcy Code.

58.     Defendants were required pursuant to the SET and the SOT Master Agreements to pay the SET and the SOT Early Termination Payments, no later than May

15, 2009, the date on which the Calculation Statement was delivered. SET and SOT Master Agreements, §§ 6(d)(ii), 12.

59.     Section 542(b) of the Bankruptcy Code expressly provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor." 11 U.S.C. § 542(b) (emphasis added). Accordingly, pursuant to section 542(b) of the Bankruptcy Code, SET and SOT were required to pay the LBCS Receivable to LBCS, and their failure to do so was in express violation of the Bankruptcy Code.

60.     Accordingly, pursuant to section 542(b) of the Bankruptcy Code, LBCS requests an order compelling and directing Defendants to turn over the LBCS Receivable, which amounts to at least $104,778,083 in principal, but may be determined to be more at trial, if such a trial occurs, as it constitutes property of the bankruptcy estate under section 541(a) of the Bankruptcy Code.

## COUNT IV

### (Demand for Payment of All Accrued Interest)

61.     LBCS repeats and realleges each and every allegation set forth in paragraphs 1 through 60 as if fully set forth herein.

62.     As alleged hereinabove, in paragraph 23, Defendants were required to pay the SET and SOT Early Termination Payments on the date that the Calculation Statement was delivered. SET and SOT Master Agreements, §§ 6(d)(ii), 12(a)(i). Additionally, Defendants were required to pay interest to LBCS on the SET and SOT

Early Termination Payments "in the Termination Currency, from (and including) the relevant Early Termination Date to (but excluding) the date such amount is paid, at the Applicable Rate." *Id.* § 6(d)(ii). The "Applicable Rate" is the Termination Rate for obligations from the Early Termination Date until the date of delivery of the Calculation Statement, and it is the Default Rate for all obligations after the date of delivery of the Calculation Statement until the date payment is received in full. *Id.* § 14 (Applicable Rate definition).

63.    The "Termination Rate" is a blended rate per annum "equal to the arithmetic mean of the cost (without proof or evidence of any actual cost) to each party (as certified by such party) if it were to fund or of funding such amounts." *Id.* (Termination Rate definition).

64.    "Default Rate," however, is the "rate per annum equal to the cost (without proof or evidence of any actual cost) to the relevant payee (as certified by it) if it were to fund or of funding the relevant amount plus 1% per annum." *Id.* (Default Rate definition).

65.    Interest at the Applicable Rate "will be calculated on the basis of daily compounding and the actual number of days elapsed." *Id.* § 6(d)(ii). Such interest (the "Master Agreement Interest") will continue to accrue, as provided for in the SET and the SOT Master Agreements, until payment is made in full. *Id.* §§ 6(d)(ii), 14.

66.    Defendants were required to deliver the Calculation Statement to LBCS "[o]n or as soon as reasonably practicable following the occurrence of an Early Termination Date." *Id.* § 6(d)(i). Defendants, however, failed to deliver the Calculation Statement until May 15, 2009. A delay of eight months is not "[o]n or as soon as

reasonably practicable." *Id.* Consequently, Defendants should not benefit from the lower Termination Rate until May 15, 2009. LBCS is entitled to Default Interest from October 16, 2008, thirty days after the Early Termination Date, which is the latest date by which the Calculation Statement should have been received, until the SET and SOT Early Termination Payments are received by LBCS. Accordingly, LBCS is entitled Master Agreement Interest calculated at the Termination Rate from the Early Termination Date to, but not including, October 15, 2008 (the date by which the Calculation Statement should have been received), and calculated at the Default Rate from October 15, 2008 to, but not including, the date LBCS receives payment of the SET and SOT Early Termination Payments in full.

67. In the alternative, should this Court find that the Calculation Statement was timely delivered, LBCS is entitled to Master Agreement Interest at the Termination Rate from the Early Termination Date to, but not including, May 15, 2009 (the date on which the Calculation Statement was received), and at the Default Rate from May 15, 2009 to, but not including, the date LBCS receives payment of the SET and SOT Early Termination Payments in full.

68. SET was required under the terms of the Oil Agreements to pay LBCS the SET Oil Payment "within one business day of the liquidation." Oil Agreements, Non-Performance ¶ (3). SET's failure to do so entitles LBCS to interest on the SET Oil Payment ("<u>SET Oil Interest</u>"), and on any damages incurred thereafter, at the New York statutory rate of 9%. N.Y. Civ. Prac. L & R §§ 5001, 5004.

69. SET terminated the transactions under the Oil Agreements and, upon information and belief, liquidated its positions on September 15, 2008, the Early

Termination Date. Accordingly, interest at the rate of 9% should be applied to the SET Oil Payment commencing on September 16, 2008 through the date that LBCS receives payment of the SET Oil Payment in full.

70. Alternatively, should this Court find that the liquidation of the Oil Agreements did not occur until May 15, 2009, when the Calculation Statement was delivered, LBCS is entitled to interest at the rate of 9% from May 16, 2009 through the date that LBCS receives payment of the SET Oil Payment in full.

71. The Master Agreement Interest and the SET Oil Interest (together the "Accrued Interest") constitutes property of the bankruptcy estate under section 541(a) of the Bankruptcy Code. Accordingly, LBCS requests an order pursuant to section 542 of the Bankruptcy Code, compelling Defendants to pay interest as follows: on the SET and the SOT Early Termination payments (1) calculated at the Termination Rate from the Early Termination Date to, but not including October 15, 2008, the date by which the Calculation Statement should have been delivered, and at the Default Rate from October 15, 2008, to, but not including, the date LBCS receives payment of the SET and SOT Early Termination Payments in full, or in the alternative, (2) calculated at the Termination Rate from the Early Termination Date to, but not including May 15, 2009, the date on which the Calculation Statement was delivered, and at the Default Rate from May 15, 2009 to, but not including, the date LBCS receives payment of the SET and SOT Early Termination Payments in full.

72. Additionally, LBCS seeks an order requesting payment of the SET Oil Interest at the statutory rate of 9% from September 16, 2008 to the date that LBCS receives payment of the SET Oil Payment in full, or, (2) in the alternative, should this

Court determine that liquidation of the Oil Agreements occurred upon delivery of the Calculation Statement, LBCS requests SET Oil Interest on the SET Oil Payment from May 16, 2009 to the date that LBCS receives payment of the SET Oil Payment in full.

### COUNT V

**(Declaratory Judgment That Defendants Violated The Automatic Stay and an Order Requiring Turnover of the LBCS Receivable and Accrued Interest)**

73.     LBCS repeats and realleges each and every allegation set forth in paragraphs 1 through 72 as if fully set forth herein.

74.     Pursuant to section 362(a)(3) of the Bankruptcy Code, the filing of a voluntary case under chapter 11 of the Bankruptcy Code likewise operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" absent an order of the Bankruptcy Court granting relief from the stay.   11 U.S.C. § 362(a)(3).

75.     The LBCS Receivable constitutes property of LBCS's estate, and Defendants' withholding therefore constituted, and continues to constitute, an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"   11 U.S.C. § 362(a)(3).

76.     Section 362(a)(6) of the Bankruptcy Code bars any creditor from taking "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]"   11 U.S.C. § 362(a)(6).   Defendants' assertion of the Purported Setoffs is an attempt to collect, in full, sums allegedly owed to RBS, ABN AMRO, and SES, by either LBSF, LBI, or LBIE in clear violation of section 362(a)(6).

77.    Moreover, section 362(a)(7) expressly prohibits the exercise of a right of "setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor[.]"   11 U.S.C. § 362(a)(7). Thus, even if Defendants had a valid right of setoff under section 553(a) of the Bankruptcy Code (which they do not), section 362(a)(7) expressly prohibits them from exercising any such right unless they first promptly seek relief from the automatic stay, which Defendants entirely failed to do.

78.    The exception to the automatic stay for swap participants in section 362(b)(17) to "offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such [swap agreements]" does not extend to protect the exercise of nonmutual setoffs, such as the Purported Setoffs described herein.

79.    Similarly, the exception to the automatic stay for master netting agreement participants in section 362(b)(27) to "offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such master netting agreements" does not extend to protect the exercise of nonmutual setoffs, such as the Purported Setoffs described herein.

80.    Defendants' wanton disregard of the Bankruptcy Code and this Court's authority and discretion to permit setoffs is a violation of the automatic stay existing by virtue of sections 362(a)(3), 362(a)(6), and 362(a)(7) of the Bankruptcy Code.

81.    LBCS is entitled to a declaratory judgment that Defendants acted in violation of sections 362(a)(3), 362(a)(6), and 362(a)(7) of the Bankruptcy Code, and

an order requiring SET and SOT to turn over the LBCS Receivable and Accrued Interest, in an amount to be determined at trial, if any such trial occurs, to LBCS.

<u>**COUNT VI**</u>

**(An Order Pursuant to Section 105(a) Finding Contempt and Awarding Damages to LBCS for Defendants' Willful Violation of the Automatic Stay)**

82.    LBCS repeats and realleges each and every allegation set forth in paragraphs 1 through 81 as if fully set forth herein.

83.    Pursuant to section 105(a) of the Bankruptcy Code, the Bankruptcy Court is authorized to award LBCS monetary damages, including actual and consequential damages, and any applicable interest, for Defendants' willful violation of the automatic stay.

84.    Because Defendants willfully and wantonly violated the automatic stay, by withholding property of the LBCS estate in an attempt to exercise a nonmutual and impermissible Purported Setoff, Defendants should be sanctioned and LBCS awarded monetary damages, in an amount to be determined at trial, if any such trial occurs, and including (but not limited to) LBCS's actual damages, costs, Accrued Interest, any additional applicable interest, and attorneys' fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE LBCS respectfully requests that judgment be entered as follows:

A.  On Count I, a judgment declaring that Defendants' assertion of the Purported Setoffs is unlawful because it is an attempt to set off nonmutual obligations, which is not permitted under, and constitutes a clear violation of, section 553(a) of the Bankruptcy Code;

B.  On Count II, a judgment declaring that no exception to the mutuality requirements in section 553(a) exists in the Safe Harbor Provisions of the Bankruptcy Code to permit the exercise of the Purported Setoffs;

C.  On Count III, a judgment that the LBCS Receivable is property of the LBCS bankruptcy estate under section 541 of the Bankruptcy Code and requiring SET and SOT to turn over, under section 542 of the Bankruptcy Code, the principal amount of the LBCS Receivable, which amounts to no less than $104,778,083, and may amount to greater than $104,778,083, as determined at trial, if any such trial occurs;

D.  On Count IV, a judgment requiring Defendants to turn over Accrued Interest on the LBCS Receivable, under section 542 of the Bankruptcy Code, in an amount to be determined at trial, if any such trial occurs;

D.  On Count V, a judgment finding Defendants violated the automatic stay by withholding the LBCS Receivable and attempting to effectuate the Purported Setoffs, and that, as a result, Defendants are required to turn over the LBCS Receivable plus Accrued Interest, in amounts to be determined at trial, if any such trial occurs;

E.    On Count VI, a judgment sanctioning Defendants and directing them to pay damages to LBCS pursuant to section 105(a) of the Bankruptcy Code, in an amount to be determined at trial, if any such trial should occur, but in all events including actual damages, costs, and all attorneys' fees and expenses incurred by LBCS by reason of Defendants' willful and wanton violation of the automatic stay; and

F.    For such other and further relief, including interest, costs, and attorneys' fees, as is just.

Dated: New York, New York
       February 22, 2011

*/s/ Ralph Miller*
Ralph Miller, Esq.
Peter Gruenberger, Esq.
Robert Lemons, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0019
Telephone: (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for Debtor and Plaintiff*
*Lehman Brothers Commodity Services Inc.*
